******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# 57 BROAD STREET STAMFORD, LLC, ET AL. *v.*
# SUMMER HOUSE OWNERS, LLC
## (AC 39912)

Lavine, Prescott and Harper, Js.

*Syllabus*

The plaintiffs sought, inter alia, an injunction restraining the defendant from
interfering with their alleged rights under a certain easement contained
in a declaration establishing an entity described therein as a six unit,
air rights condominium. The plaintiffs purchased and jointly owned unit
1 of the condominium. Unit 2, which was the beneficiary of most of the
air rights, included a 6900 square foot easement area that benefited unit
1. The easement granted to unit 1 the right to pass and repass over the
easement area for purposes of access to the building and improvements
on unit 1, the recycling and refuse area on unit 2 and eighteen parking
spaces in the parking garage. As part of the construction of the condomin-
ium, the defendant built a 1500 square foot service access structure in the
center of the easement area. After the defendant refused the plaintiffs'
demand that it cease and desist from building further structures in the
easement area and that it demolish the service access structure, the
plaintiffs commenced the present action claiming that their easement
rights encompassed the entirety of the easement area and that the
construction of the service access structure interfered with those rights.
Following a trial to the court, the court rendered judgment in favor of the
defendant, concluding that the defendant's construction of the service
access structure did not materially interfere with the plaintiffs' reason-
able use and enjoyment of the easement. On the plaintiffs' appeal to
this court, *held*:

1. The trial court properly concluded that the defendant's construction of the
service access structure did not materially interfere with the plaintiffs'
reasonable use and enjoyment of the easement: although the plaintiffs
claimed that construction of the service access structure interfered with
their rights under the easement to access the building and improvements
on unit 1 and the recycling and refuse area on unit 2 because large
vehicles are prevented from entering the area fully, there may be traffic
congestion if tenants are moving into the apartments in unit 2 at the
same time deliveries are being made to the other units, and hand trucks
must be used to remove refuse from the area, the claim that there may
be congestion if a certain number of vehicles are present in the area at
once was mere conjecture, especially given that the plaintiffs had yet
to occupy unit 1, the evidence admitted at trial established that the
plaintiffs would be able to access the recycling and refuse area, as the
occupants of other units currently do without issue, and nothing in the
language of the easement provided for full and unlimited access by large
vehicles or prohibited the construction of permanent structures within
the easement area; moreover, the record supported the court's conclu-
sion that, despite the existence of the service access structure, the
plaintiffs are able to access their unit and to make improvements, as
they are entitled to do under the easement, by way of a ten foot wide
passage, a seven foot wide sidewalk and a certain loading area, and,
therefore, the plaintiffs did not demonstrate that, in order to make
reasonable use and enjoyment of their easement rights, large vehicles
must be able to get directly to the rear door of their unit.

2. The plaintiffs could not prevail on their claim that the trial court modified
their easement rights in concluding that the defendant had the unilateral
right to determine the method, timing and location by which the plaintiffs
might use the easement area, that court having properly construed the
relevant language of the easement; in interpreting the language of the
easement, the court rejected the plaintiffs' assertion that the entirety
of the easement area must be available to them because their position
did not comport with the stricture of *Stefanoni* v. *Duncan* (282 Conn.
686), that the use of an easement be reasonable and as little burdensome
to the servient estate as possible, and, therefore, the court correctly

concluded that the plaintiffs' interpretation of their rights under the easement did not comport with the language of the easement, which provided the plaintiffs with the right to pass and repass for the purposes of accessing their unit and the improvements thereon, the recycling and refuse area and parking in the parking garage, and that the plaintiffs' interpretation that the easement provided them with unlimited access was unreasonable under the clear language of the easement.

Argued February 5—officially released September 18, 2018

*Procedural History*

Action for an injunction restraining the defendant from interfering with the plaintiffs' alleged rights under certain easements, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Hon. Taggart D. Adams*, judge trial referee; judgment for the defendant, from which the plaintiffs appealed to this court. *Affirmed.*

*Matthew B. Woods*, for the appellants (plaintiffs).

*James R. Fogarty*, for the appellee (defendant).

*Opinion*

HARPER, J. In this easement dispute, the plaintiffs, 57 Broad Street Stamford, LLC, and 59 Broad Street Stamford, LLC, appeal from the judgment rendered by the trial court, following a trial to the court, in favor of the defendant, Summer House Owners, LLC. On appeal, the plaintiffs claim that the court erred in concluding that (1) the defendant's construction of a 1500 square foot service access structure within a 6900 square foot easement area did not materially interfere with the plaintiffs' reasonable use and enjoyment of the easement area, and (2) the defendant had the unilateral right to determine the method, timing, and location by which the plaintiffs might use the easement area. We affirm the judgment of the trial court.

The following facts, as set forth in the court's memorandum of decision or otherwise in the record and undisputed, and procedural history are relevant to our resolution of this appeal. In a complaint dated January 11, 2016, the plaintiffs claimed that the defendant materially and substantially had interfered with their use and enjoyment of an easement, titled "Easement A" (easement).[1] The plaintiffs sought both compensatory damages and injunctive relief. The easement is "contained in the recorded documents [declaration] establishing the entity known as the Broad Summer Condominium [condominium] located in downtown Stamford . . . . The [c]ondominium is described as an 'air rights condominium,' and consists of six units. Unit 1 contains what is described as an almost forty year old, 30,000 square foot three story building with full basement fronting on Broad Street . . . . The building has been vacant for several years. Unit 1 is jointly owned by the plaintiffs . . . . Unit 2 . . . is the beneficiary of most of the air rights and the present site of a recently constructed [twenty-one] story residential apartment building that includes four parking levels, owned by the defendant and known as Summer House. . . .[2]

"The area of [u]nit 2, which has an undivided interest in the [c]ondominium of 25.97 percent, includes an easement area . . . for the benefit of [u]nits 1, 3 and 4. . . . The [easement] area consists of a little less than 6900 square feet. . . .

"The [d]eclarant of the [c]ondominium is Tolari, LLC [Tolari]. Thomas Rich, the chief executive officer of F. D. Rich Co[mpany], a long time real estate developer in Stamford, is Tolari's managing member, and also an owner of Summer House [condominium]. F. D. Rich Co[mpany] is described as the primary developer of Summer House. . . . Tolari and the principals of the plaintiffs, Kostas Alafoyiannis (principal of 57 Broad [Street Stamford, LLC]) and Alexander Todorovic (principal of 59 Broad [Street Stamford, LLC]) signed a contract, dated June 19, 2012, for [the plaintiffs'] purchase

of [u]nit 1. . . . Because the [c]ondominium [d]eclaration and the plans for the apartment building were not complete at that time, the contract contained an 'out' clause allowing the [u]nit 1 purchasers a period of time to rescind the purchase for 'any reason or no reason.' There followed negotiations between attorneys for the [u]nit 1 purchasers . . . and the attorney for the seller-declarant . . . ."[3] (Footnote added.) These negotiations concerned the easement language that is at issue in the present case. The language as negotiated is contained in [§] 12.2 of the declaration, which is dated October 24, 2012.[4]

Approximately one year later, the construction plans were finalized. "The construction contract for Summer House was dated August 28, 2013. . . . The plaintiffs were notified that construction would commence by letter dated January 7, 2014. . . . The progress of construction is shown by dated photographs . . . taken between February, 2014 [and] October, 2015. The . . . plaintiffs occasionally visited their building during the construction period." (Citations omitted; footnote omitted.) During this time, construction began on the service access structure at issue in this appeal. "[T]he service access structure is approximately [seventy-five] feet long running east to west and [twenty] feet wide. The structure effectively leaves three means of access to the south side of the plaintiffs' building on [u]nit 1. These means of access . . . are: (1) a [ten] foot wide passage way between the Target Store and [u]nit 1 extending south from Broad Street to the light and air easement area south of [u]nit 1; (2) a seven foot wide sidewalk running east-west between the 'service access structure' and the Target Store garage; and (3) an entryway under the Summer House varying in width from [twenty to twenty-six] feet beginning at what is labeled 'Loading Area' . . . and running east from the Target access way and turning north toward the back, or south side, of the plaintiffs' building on [u]nit 1."

Thereafter, "[i]n December, 2015, . . . [the plaintiffs' attorney], on behalf of the plaintiffs in a letter to . . . [the defendant's attorney], demanded the defendant cease and desist from building further structures located on [the easement] and demolish what had been built there. . . . [The defendant's attorney] responded a little over a week later, noting that the plaintiffs had information for over two years of the planned construction on [the easement] and in any event, the plaintiffs would have the access and parking called for in [§] 12.2 of the [d]eclaration."

The plaintiffs commenced the underlying action the following month, claiming that their easement rights encompassed the entirety of the easement area and that the construction of a service access structure in the center of the easement interfered with those rights. A five day trial to the court took place between June 15

and July 21, 2016.[5] On November 30, 2016, the court issued its memorandum of decision. It concluded that the defendant had not interfered with the plaintiffs' use and enjoyment of the easement and rendered judgment in favor of the defendant.[6] This appeal followed.

I

The plaintiffs first claim that the court improperly concluded that the defendant did not interfere with their reasonable use and enjoyment of the easement. Specifically, the plaintiffs argue that the court erred in concluding that the defendant's construction of the 1500 square foot service access structure within the 6900 square foot easement area did not violate their easement rights. We disagree.

We first set forth our standard of review.[7] "[T]he determination of the intent behind language in a deed, considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is . . . plenary. . . . Thus, when faced with a question regarding the construction of language in deeds, the reviewing court does not give the customary deference to the trial court's factual inferences." (Internal quotation marks omitted.) *Avery* v. *Medina*, 151 Conn. App. 433, 440–41, 94 A.3d 1241 (2014). In contrast, "[t]he determination of [the] reasonableness [of the use of an easement] is for the trier of fact." (Citations omitted; internal quotation marks omitted.) *Stefanoni* v. *Duncan*, 282 Conn. 686, 701, 923 A.2d 737 (2007). "This court [has] observed that review of the court's conclusion that [certain] plantings violated . . . easement rights involves a mixed question of fact and law. [S]o-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense. . . . [Such questions require] plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Zirinsky* v. *Carnegie Hill Capital Asset Management, LLC*, 139 Conn. App. 706, 714–15, 58 A.3d 284 (2012); see also *D'Appollonio* v. *Griffo-Brandao*, 138 Conn. App. 304, 323, 53 A.3d 1013 (2012). "When legal conclusions of the trial court are challenged on appeal, we must decide whether [those] . . . conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Zirinsky* v. *Carnegie Hill Capital Asset Management, LLC*, supra, 715.

"It is well settled that [a]n easement creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the rules authorized by the easement. . . . [T]he benefit of an easement . . . is considered a nonpossessory interest in land because it generally authorizes limited uses of the burdened property for a particular purpose. . . . [E]asements are not ownership interests but rather privileges to use [the] land of another in [a]

certain manner for [a] certain purpose . . . ." (Internal quotation marks omitted.) *Cheshire Land Trust, LLC* v. *Casey*, 156 Conn. App. 833, 844, 115 A.3d 497 (2015). "In determining the character and extent of an easement created by deed, the ordinary import of the language will be accepted as indicative of the intention of the parties, unless there is something in the situation of the property or the surrounding circumstances that calls for a different interpretation." (Internal quotation marks omitted.) *Stefanoni* v. *Duncan*, supra, 282 Conn. 700. "Except as limited by the terms of the servitude . . . the holder of an easement . . . is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude. . . . Likewise, [e]xcept as limited by the terms of the servitude . . . the holder of the servient estate is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude." (Citations omitted; internal quotation marks omitted.) *Zirinsky* v. *Carnegie Hill Capital Asset Management, LLC*, supra, 139 Conn. App. 713.

We begin our analysis by identifying the plaintiffs' rights under the easement. Section 12.2 of the declaration provides in relevant part: "(i) A perpetual right and easement is granted to Unit No. 1 and to the Association to pass and repass over those portions of Unit No. 2 shown as 'Easement A' on the Survey including all walkways, drives, roads and parking areas shown on the Survey, for the purposes of: (a) accessing the building and Improvements now or hereafter located upon Unit No. 1; (b) accessing the recycling and refuse area located on Unit No. 2; and (c) accessing eighteen (18) parking spaces located within Unit No. 2 in the area shown on the Survey, and parking vehicles within said parking spaces ('Parking Area'). The easement granted herein for the benefit of Unit No. 1 shall be shared with others to whom the Owner of Unit No. 2 has granted, or shall hereafter grant, rights to enter and pass over and upon Unit No. 2 . . . ."[8] The easement thus sets forth the right to pass and repass over the easement for three particular purposes. See *Zirinsky* v. *Carnegie Hill Capital Asset Management, LLC*, supra, 139 Conn. App. 716–17 ("an easement generally authorizes limited uses of the burdened property for a particular purpose" [emphasis omitted; internal quotation marks omitted]). Those purposes include access to (1) the building and improvements on unit 1, (2) the recycling and refuse area on unit 2, and (3) eighteen parking spaces in the parking garage.

On appeal, the plaintiffs claim that the construction of the service access structure interferes with the first two rights set forth in the easement—accessing the building and improvements on unit 1 and accessing the recycling and refuse area on unit 2. Specifically, the plaintiffs claim that, as a result of the service access structure, large trucks are prevented from entering the

area fully, there may be traffic congestion if tenants are moving into the apartments in unit 2 at the same time deliveries are being made to the other units, and hand trucks must be used to remove refuse from the area.

Despite the plaintiffs' contention to the contrary, the trial court concluded that the construction of the service access structure does not interfere with or impair their rights under the easement. The claim that there *may be* congestion if a certain number of vehicles are present in the area at once is mere conjecture, especially given that the plaintiffs have yet to occupy unit 1. Additionally, the evidence admitted at trial established that the plaintiffs still will be able to access the recycling and refuse area, as the other units currently do without issue. Thus, the only remaining argument is that the service access structure unreasonably interferes with the plaintiffs' use and enjoyment of the easement because large vehicles, such as box trucks and tractor trailer trucks, can make it no closer than approximately 100 feet of unit 1.[9]

As an initial matter, we note that nothing in the language of the declaration provides for full and unlimited access by large vehicles. The plaintiffs' attorney conceded at oral argument before this court that the plaintiffs intended for the easement to permit access for large vehicles but that it was never discussed with the defendant.[10] Additionally, nothing in the language of the declaration prohibits the construction of permanent structures within the easement area.[11] Cf. *Avery* v. *Medina*, supra, 151 Conn. App. 442 (easement language placed restriction on permanent structures); *Zirinsky* v. *Carnegie Hill Capital Asset Management, LLC*, supra, 139 Conn. App. 716 (easement language explicitly stated that "no construction of any permanent structure may be erected on the [e]asement [p]roperty" [internal quotation marks omitted]).

More importantly, as the court concluded and the record supports, the plaintiffs still are able to access their unit and make improvements, as they are entitled to do under the easement. The court noted in its memorandum of decision that, even with the structure, three means of access to the rear of the plaintiffs' unit remain—a ten foot wide passage, a seven foot wide sidewalk, and a loading area under the Summer House. Evidence presented at trial established that large trucks make deliveries to the other units with which the plaintiffs share the easement rights without issue. These trucks can get as close as 100 feet to the building, and then deliveries are made via hand trucks. The court also noted that "vehicles sufficient to allow service of the HVAC equipment on the roof of the [u]nit 1 building and to access other exterior building repairs could [occur]" even with the existence of the structure.

The plaintiffs have not demonstrated that, in order to

make reasonable use and enjoyment of their easement rights, large trucks must be able to get directly to the rear door of their unit. See *Zhang* v. *Omnipoint Communications Enterprises, Inc.*, 272 Conn. 627, 637, 866 A.2d 588 (2005) ("the beneficiary of an easement [may] make any use of the servient estate that is *reasonably necessary* for the convenient enjoyment of the servitude for its intended purpose" [emphasis added]). The plaintiffs are not prevented from accessing their unit and making improvements to it, or accessing the recycling and refuse area. The plaintiffs have failed to establish that the defendant's construction of the service access structure impairs their reasonable use of the easement, or that it otherwise interferes with their easement rights. See *Kelly* v. *Ivler*, 187 Conn. 31, 48–49, 450 A.2d 817 (1982) ("[T]he sole purpose of [the] easement was to provide the owners of Lots 1 and 2 with a means by which they could walk to the beach. We cannot say, after viewing the photographs included as exhibits and in light of the use of the easement, that the fence materially or substantially interferes with pedestrian passage over the easement.").[12] We are guided further by the principle that "[t]he use of an easement must be reasonable and as little burdensome to the servient estate as the nature of the easement and the purpose will permit." (Internal quotation marks omitted.) *Stefanoni* v. *Duncan*, supra, 282 Conn. 701. On the basis of the foregoing, we cannot conclude that the court erred in concluding that the structure did not materially and substantially interfere with the plaintiffs' use and enjoyment of the easement.

## II

The plaintiffs next claim that the court's decision has given the defendant the "unilateral right to determine the method, timing, and location by which the plaintiffs . . . might use the easement area." In support of their claim, the plaintiffs cite to the following language from the court's memorandum of decision: "The court does not agree with the plaintiffs' contention that the whole of the [easement] area must be available to allow access to [u]nit 1. This position does not comport with the stricture of *Stefanoni* v. *Duncan*, [supra, 282 Conn. 699], that the use of an easement [by the dominant estate] be reasonable and as little burdensome [to the servient estate] as possible." The plaintiffs argue that the court "adopted the defendant's unilateral determination of what was reasonable vehicular access to unit 1" and, as a result, "modified the plaintiffs' right and easement as to its spatial parameters . . . ."[13] We disagree.

"The owner of land over which an easement has been granted has, by law, all the rights and benefits of ownership consistent with the existence of the easement. . . . Of necessity, the interests of the owner of the easement often conflict with the interests of the

owner of the burdened estate. By law, however, each of the parties owes certain duties to the other." (Citations omitted; internal quotation marks omitted.) *Kelly* v. *Ivler*, supra, 187 Conn. 48. "The use of an easement must be reasonable and as little burdensome to the servient estate as the nature of the easement and the purpose will permit. . . . The determination of [the] reasonableness [of the use of an easement] is for the trier of fact . . . ." (Citation omitted; internal quotation marks omitted.) *Stefanoni* v. *Duncan*, supra, 282 Conn. 701. "The principles guiding our construction of land conveyance instruments, [however] are well established. The construction of a deed . . . presents a question of law which we have plenary power to resolve." (Internal quotation marks omitted.) Id., 704.

Contrary to the plaintiffs' contention on appeal, the court did not hold that the "defendant . . . had the unilateral right to determine the method, timing and location by which the plaintiffs might use the easement area." Instead, the court merely rejected the plaintiffs' claim that the entirety of the easement area must be available to them because their "position does not comport with the stricture of *Stefanoni* v. *Duncan*, [supra, 282 Conn. 699], that the use of an easement be reasonable and as little burdensome as possible." Furthermore, the plaintiffs' position ignores the fact that the easement rights must be shared with several other units—thereby negating the argument they made to the court that "the whole of the [easement] area must be available to allow access to [u]nit 1." Thus, the court correctly concluded that the plaintiffs' interpretation of their rights under the easement did not comport with the language of the easement, which provides the plaintiffs with the right to pass and repass for the purposes of accessing their unit and the improvements thereon, the recycling and refuse area, and parking in the parking garage. We agree with the court that the plaintiffs' interpretation that the easement provides them with unlimited access is unreasonable under the clear language of the easement.

Additionally, as we conclude in part I of this opinion, the defendant did not unreasonably interfere with or impair the plaintiffs' easement rights by constructing the service access structure. See *Schwartz* v. *Murphy*, 74 Conn. App. 286, 297 n.7, 812 A.2d 87 (2002) ("[e]xcept as limited by the terms of the servitude . . . the holder of the servient estate is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude" [internal quotation marks omitted]), cert. denied, 263 Conn. App. 908, 819 A.2d 841 (2003), cert. denied, 546 U.S. 820, 126 S. Ct. 352, 163 L. Ed. 2d 61 (2005). Therefore, it necessarily follows that the court did not modify the plaintiffs' easement rights. Accordingly, we conclude that the court properly construed the language of the easement.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiffs also alleged in their complaint that the defendant violated a light and air easement. On appeal, the plaintiffs do not challenge the court's conclusion as to the light and air easement.

[2] "Units 3 and 4 are older buildings fronting the west side of lower Summer Street . . . . Unit 5 is the location of the Majestic Theater at 118 Summer Street. Unit 6 is a roadway. The locations of the [c]ondominium units are depicted on a property survey . . . ."

[3] Initially, the plaintiffs were granted eighteen parking spaces within the easement area. Following negotiations in and around August, 2012, the eighteen parking spaces were moved from the easement area to a new parking garage—Summer House garage. It is undisputed that the plaintiffs do not have the right to eighteen parking spaces within a portion of the 6900 square foot easement area at issue in this appeal.

[4] The limited warranty deed for unit 1, dated October 26, 2012, was recorded in the Stamford land records on October 31, 2012. The plaintiffs' deed references "the terms, conditions, restrictions and provisions of . . . [the] Declaration of Broad Summer Condominium recorded October 24, 2012, in . . . the Stamford Land Records."

[5] The court bifurcated the proceedings. The court first addressed the threshold issue of whether the defendant had violated the easement. Only if the court had found that the defendant had violated the easement would it hold further proceedings to determine the appropriate legal and equitable relief. Because the court found that the defendant did not violate the easement, it rendered judgment in favor of the defendant.

[6] The court further stated in its memorandum of decision that, "[h]aving found that the defendant has not violated the plaintiffs' easement rights, [the] court is not required to decide the merits of the defendant's special defense that the institution of this case in January, 2016, constituted an unreasonable and inexcusable delay that was prejudicial to the defendant. Nevertheless, the court observes the defense has merit. . . . At the very least, the plaintiffs' delay would preclude any equitable relief."

[7] The plaintiffs challenge on appeal the court's determination that the defendant did not interfere with their easement rights. The plaintiffs' attorney conceded at oral argument before this court that the plaintiffs' claim does not challenge the scope of the easement, which is a finding of fact. See *Stefanoni* v. *Duncan*, 282 Conn. 686, 699, 923 A.2d 737 (2007) ("[t]he determination of the scope of an easement is a question of fact" [internal quotation marks omitted]).

[8] Section 12.2 of the declaration further provides: "[T]he Owner of Unit No. 1 shall have the right ('Parking Easement') to access and park vehicles within the eighteen (18) parking spaces on an exclusive basis located within the area on Unit No. 2 shown as 'Easement A' on the Survey and numbered as parking spaces one (1) to eighteen (18). Subject to the provisions of subparagraph (ii) of this Section 12.2, the Owner of Unit No. 2, in order to commence construction activities on Unit No. 2, shall have the right, from time to time, to relocate the eighteen (18) parking spaces within the Perimeter Boundaries of Unit No. 2, provided further that, simultaneously upon any such relocation, the Owner of Unit No. 2 shall provide the Owner of Unit No. 1 with any additional access rights over and upon Unit No. 2 as shall be reasonably necessary to access such relocated parking spaces. All costs and expenses incurred by the Owner of Unit No. 2 in operating, maintaining, repairing, and replacing (i) the Improvements on Unit No. 2 used to operate as a common parking area; and (ii) the recycling and refuse area located upon Unit No. 2 or upon any property adjacent to Unit No. 2 (whether owned by Declarant or an affiliate of Declarant) shall be the sole obligation of Unit No. 2."

[9] As the court noted in its memorandum of decision: "There is no question that the service access building on the [easement] area restricts the plaintiffs' use of that area to an extent, but the plaintiffs must show by a preponderance of the evidence, that their claim to use of the 'entirety' of the [easement] area for all types of vehicles is a reasonable use of their easement rights and as 'little burdensome' to the defendant 'as the nature of the easement and [its] purpose will permit.' *Stefanoni* v. *Duncan*, supra, 282 Conn. 701. They must also prove by that standard that they are not receiving the benefits assured by [§] 12.2 of the [d]eclaration."

[10] The plaintiffs argue that the language "pass and repass" in the easement requires pass and repass of vehicles of *all sizes*. At oral argument before

this court, the plaintiffs conceded that there was no discussion between the parties regarding vehicular access to the easement area and clarified that it was the plaintiffs who intended that the area include vehicular access.

[11] We note that the easement was drafted jointly by the parties' attorneys. If the plaintiffs wanted to include language that permitted access by vehicles of all sizes, or that prohibited the construction of any permanent structures, they could have proposed that such language be included. They did not.

[12] We note that the plaintiffs were aware of the construction of the structure well before they complained of it to the defendant. In March, 2013, the plaintiffs and their counsel received information of the planned location for the service access structure. In September, 2013, the plaintiffs suggested an alternative plan, which the defendant rejected. The plaintiffs did not object further during the two year period before the construction of the structure commenced. In December, 2015, after construction had commenced, the plaintiffs contacted the defendant and demanded that it cease construction.

[13] The plaintiffs also argue that the defendant should have consulted with them prior to construction because it did not have the unilateral right to determine the scope of the easement. We note, however, that the defendant did inform the plaintiffs of the construction plans in 2013—two years prior to construction commencing. See footnote 12 of this opinion. Although the plaintiffs proposed an alternative plan at that time, which the defendant rejected, the plaintiff failed to take further action to contest the construction or to involve themselves in the planning, until construction commenced in 2015. See id. Thus, to the extent that the plaintiffs suggest that the defendant acted unilaterally without their knowledge or consent, we reject that argument.

_____