SUSAN SIMONE ET AL. *v.* FREDERICK W.
MILLER, JR., ET AL.
(AC 25481)

Schaller, McLachlan and Mihalakos, Js.

Argued May 5—officially released August 30, 2005

*Thomas A. Cloutier*, for the appellants (plaintiffs).

*Michael E. Cronin, Jr.*, for the appellees (defendants).

*Opinion*

SCHALLER, J. The plaintiffs, Susan Simone and Jacqueline W. Diana, appeal from the judgment of the trial court, rendered after a trial to the court, in favor of the defendants, Frederick W. Miller, Jr., and Gail C. Miller.

On appeal, the plaintiffs claim that the trial court improperly found that their predecessors in title to two parcels of real property intended to abandon the majority of their easement over a portion of the defendants' property. If it is determined that the trial court's finding of abandonment was erroneous, the plaintiffs request that we decide whether they are entitled to have the entire easement open and clear from obstruction. We reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

The record discloses the following facts and procedural history. All of the parcels of land involved in this dispute are part of a subdivision, located in the Grove Beach area of Westbrook. At one point, the Zuk family owned the parcels that eventually were purchased by the plaintiffs and the defendants. On November 16, 1965, the Zuks conveyed a certain parcel of land to the defendants. To the immediate north of this property was a thirty foot, unpaved, sloped strip of land identified as Bluff Street, which runs in an east and west direction. Bluff Street has remained a paper street[1] since the initial sketch of the subdivision that was done in 1883. The defendants obtained ownership of the portion of Bluff Street abutting their property, which is located between Elm Avenue and Massachusetts Avenue. The defendants' property was subject to an express easement by deed that provided: "Said premises are subject to whatever rights exist in other lot owners as shown on said map of [the] Lewis Subdivision to pass over the northerly 30 feet of the premises being conveyed herein which is shown as Bluff Street on said map, and to a

---

[1] See *Burke* v. *Ruggerio*, 24 Conn. App. 700, 707, 591 A.2d 453 (describing paper street as one never paved, not developed as public road, not used by abutting owners for access, no formal dedication for use as highway and no formal or informal acceptance by town), cert. denied, 220 Conn. 903, 593 A.2d 967 (1991); see also *Meder* v. *Milford*, 190 Conn. 72, 73, 458 A.2d 1158 (1983).

5 foot right of way conveyed by the Grantor, Walter J. Zuk to Ralph and Helen C. Crispino . . . which right of way is located on the northerly 5 feet of said Bluff Street." A mortgage deed to the Essex Savings Bank, recorded a few days later, also included this express easement.

Immediately north of the section of Bluff Street owned by the defendants are two parcels of land, designated as lots 10 and 11 on the subdivision map. The plaintiffs presently own these abutting properties, both of which are bounded on the south by the defendants' property. With respect to lot 11, the chain of title can be summarized as follows. The Zuks conveyed the property to Ralph Crispino and Helen C. Crispino, who in turn sold the property to James Simone, Jr., and Susan Simone in 1967. The property was then quitclaimed to the present owner, the plaintiff Susan Simone, in 1973. Consistent in this chain of title is the right appurtenant to pass and to repass over the roadway and beach as detailed on the subdivision map, as well as an express five foot right-of-way allowing pedestrian traffic over Bluff Street between Elm Avenue and Massachusetts Avenue.

The chain of title with respect to lot 10 can be fairly summarized as follows. In 1964, the Zuks conveyed this property to Joseph G. Bartoszevicz and William A. Roth, who in turn transferred it to "Susanna" Simone in 1982, who in turn sold it to Diana in 1982. Although this chain of title grants Diana "all rights appurtenant to said lot to pass and repass over the roadways and reserved beach shown on said [map,]" there is no mention of an express pedestrian five foot right-of-way over Bluff Street.

By way of a two count complaint dated September 16, 2002, the plaintiffs commenced the present action. In count one of the complaint, the plaintiffs sought to

quiet title to their right-of-way over Bluff Street, while count two alleged that the defendants had obstructed the plaintiffs' use of Bluff Street. Following a trial on March 30, 2004, the court issued its memorandum of decision on April 23, 2004.

The court found that both of the plaintiffs possess an express easement for pedestrian traffic over the northerly five feet of Bluff Street. The court further found that Bluff Street had never been used as a street and that the plaintiffs and their predecessors in interest abandoned any rights with respect to Bluff Street, with the sole exception of the five foot right-of-way, limited to foot traffic. The court then rendered judgment as follows: "The plaintiffs are the owners of a five foot right-of-way over the northerly portion of Bluff Street. Said right-of-way is limited to passage by foot. The plaintiffs' predecessors in title, by accepting the five foot right-of-way, abandoned their claims to the whole of Bluff Street between their properties and the properties of the defendants." The court also rendered judgment with respect to the second count in favor of the defendants. After the plaintiffs' motion to reargue was denied, this appeal followed. Additional facts will be set forth as necessary.

I

The plaintiffs first argue that the court improperly found that their predecessors in title intended to abandon the majority of their easement over the defendants' property. Specifically, they argue that the court improperly found abandonment of the thirty foot right-of-way over Bluff Street simply because the predecessors accepted the five foot right-of-way, limited to passage by foot. We agree with the plaintiffs.

In its memorandum of decision, the court found the following facts with respect to Bluff Street. The original subdivision map was not to scale and was more akin

to a rough sketch. Additionally, absent extensive excavation, filling and leveling, Bluff Street could not be used as a road, as there is a steep embankment starting on the northerly portion.

As a preliminary matter, we identify the relevant legal principles that guide our resolution of this issue. It has long been the law that "[i]n this jurisdiction, abandonment is a question of fact." *Miller* v. *State*, 121 Conn. 43, 49, 183 A. 17 (1936). Although an easement may be lost by abandonment, a party faces a difficult burden in establishing the necessary intent to abandon. R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 49.9, p. 501; 2 Restatement (Third) Property, Servitudes, § 7.4, pp. 352–55 (1998). "Whether there has been an abandonment is a question of intention to be determined from all the surrounding circumstances, and is a question of fact and not of law. The proof must clearly indicate that it was the intention of the owner of the dominant estate to abandon the easement. . . . [Abandonment] implies a voluntary and intentional renunciation, but the intent may be inferred as a fact from the surrounding circumstances. . . . Although, before legal abandonment can be found, there must be proof of an intent to abandon . . . that requirement can be met without resort to proof of specific intent. Most frequently, where abandonment has been held established, there has been found present some affirmative act indicative of an intention to abandon . . . but nonuser, as of an easement, or other negative or passive conduct may be sufficient to signify the requisite intention and justify a conclusion of abandonment. The weight and effect of such conduct depends not only upon its duration but also upon its character and the accompanying circumstances." (Citations omitted; internal quotation marks omitted.) *Friedman* v. *Westport*, 50 Conn. App. 209, 212–13, 717 A.2d 797, cert. denied, 247 Conn. 937, 722 A.2d 1216 (1998). We note

that our "Supreme Court has stated that there must be clear proof of intent to abandon an easement. *Byard* v. *Hoelscher*, 112 Conn. 5, 16, 151 A. 351 (1930); *Richardson* v. *Tumbridge*, 111 Conn. 90, 93, 149 A. 241 (1930); *Stueck* v. *G. C. Murphy Co.*, 107 Conn. 656, 662, 142 A. 301 (1928)." *McManus* v. *Roggi*, 78 Conn. App. 288, 299, 826 A.2d 1275 (2003).

We now set forth our well established standard of review of the trial court's factual findings. "[W]e will upset a factual determination of the trial court only if it is clearly erroneous. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *U.S. Bank National Assn., Trustee* v. *Palmer*, 88 Conn. App. 330, 336, 869 A.2d 666 (2005).

In its memorandum of decision, the court expressly found "that the plaintiffs' predecessors in title, by agreeing to limit their use to the northerly five feet of Bluff Street, in effect, limited their use of Bluff Street to the express grant of a five foot easement for passage by foot, and, in doing so, abandoned their claim to the balance of Bluff Street." After thoroughly reviewing the record before us, we conclude that there is no evidence to support this finding.

The pertinent evidence adduced at trial may be summarized as follows. There was testimony that the owners of lots 10 and 11 never intended to abandon their thirty foot right-of-way. Daniel Joseph Diana, who is married to Jacqueline Diana, testified that he and his son-in-law performed maintenance on Bluff Street,

including cutting the grass and trimming the trees and shrubs. Susan Simone stated that in the late 1960s, her children used the disputed land to run back and forth while playing with the defendants' children. She also indicated that her husband maintained the lawn area on Bluff Street and may have trimmed the shrubs. Finally, Bluff Street was used as an accessway for vehicles so that work could be completed on the Simone house.

On the basis of our review of the entire record, including the transcript of the trial and the evidence submitted to the court, we are unable to locate any evidence that supports the court's finding of abandonment. "Whether there has been an abandonment is a question of intention to be determined from all the surrounding circumstances, and is a question of fact and not of law. *The proof must clearly indicate that it was the intention of the owner of the dominant estate to abandon the easement. Mere nonuser of an easement created by deed, however long continued, is insufficient to establish abandonment.* There must also be some conduct on the part of the owner of the servient estate adverse to and inconsistent with the existence of the easement and continuing for the statutory period, or *the nonuser must be accompanied by unequivocal and decisive acts clearly indicating an intent on the part of the owner of the easement to abandon the use of it.*" (Emphasis added; internal quotation marks omitted.) *Byard* v. *Hoelscher*, supra, 112 Conn. 16. There is nothing to indicate that the plaintiffs demonstrated *any* intent to abandon the thirty foot right-of-way over Bluff Street. In *Byard*, our Supreme Court, in resolving the similar issue, stated: "We have recited at length the findings of the trial court upon this issue, but we cannot find in them the elements necessary to support its conclusion of an abandonment of the driftway within the principles of law just cited, and we must therefore find that conclusion to be erroneous." Id. In the present case,

we cannot find any acts by the plaintiffs or their predecessors indicating an intent to abandon the thirty foot easement.

The defendants' argument, which the court adopted in its decision, is that by accepting the five foot easement over the northerly portion of Bluff Street limited to pedestrian traffic, the plaintiffs' predecessors abandoned their rights with respect to the thirty foot right-of-way. The premise is flawed for several reasons. First, a review of the deeds in the chain of title to the Diana property reveals the absence of *any mention* of the five foot right-of-way. The owners of this particular lot, therefore, could not have accepted the five foot right-of-way and in turn abandoned their right to use of Bluff Street in its entirety.[2] Second, the right to the five foot right-of-way limited to pedestrian traffic and the right to use the entire thirty feet of Bluff Street are not mutually exclusive. Accordingly, the acceptance of the former does not indicate a clear, decisive and unequivocal intent to abandon the latter. See *Richardson* v. *Tumbridge*, supra, 111 Conn. 93–94. Finally, we note that the undisputed evidence at trial indicated that the owners of the dominant estates, the plaintiffs and their predecessors, used the easement over the servient estate owned by the defendants. There is nothing in the evidence to suggest that the owners of the dominant estate did not use the easement in its intended manner. For all these reasons, therefore, the argument that the evidence supported a finding of abandonment on the part of the

[2] During the trial, the defendants conceded that a five foot right-of-way existed in favor of the plaintiff Simone's property. Additionally, in their brief submitted to this court, the defendants stated: "The [trial] [c]ourt, in its decision, did not make a specific note that the original deed from Zuk to Diana's predecessor in title did not grant a five (5) [foot] easement over Bluff Street. It did not make a specific finding that the Diana property had this five (5) foot easement along the Simone property. Although this is an obvious benefit to the Diana property, and a potentially new burden on the . . . Millers' property, the Millers will accept this aspect of the decision."

plaintiffs or their predecessors is clearly erroneous because there is no evidence to support it. See *Gallo-Mure* v. *Tomchik*, 78 Conn. App. 699, 713, 829 A.2d 8 (2003).

## II

We next address the plaintiffs' claim that they are entitled to have the entire easement kept open and clear from obstruction. Specifically, the plaintiffs argue that the present case presents an exception to the well established general rule that appellate courts do not engage in fact-finding and that we should depart from that general rule and determine the scope of the plaintiffs' right-of-way over Bluff Street. The plaintiffs further contend that they are entitled to keep the entire length and width of Bluff Street clear from obstruction to ensure their access to the right-of-way. We decline the plaintiffs' invitation and remand the case for a determination of the scope of the plaintiffs' right-of-way over Bluff Street.

Before we discuss the issue regarding the scope of the plaintiffs' right-of-way, we must address an issue that stems from our resolution of the first issue raised by the plaintiffs. The trial court did not expressly determine that the plaintiffs were granted an easement over Bluff Street. Instead, the court's conclusion was implicit in its finding of abandonment.[3] In order to abandon their right-of-way, the plaintiffs' predecessors must, in

[3] The defendants, in their brief, raised as an alternate ground for affirmance the issue of whether the plaintiffs' predecessors in title were in fact granted an easement over Bluff Street. Although the defendants did not file a preliminary statement of issues alleging that this claim constituted an alternative ground for affirming the decision of the trial court; see Practice Book § 63-4 (a) (1) (A); we will review the claim because the plaintiffs were not prejudiced thereby, as they were afforded an opportunity to respond in their reply brief. See *Dietter* v. *Dietter*, 54 Conn. App. 481, 504 n.7, 737 A.2d 926, cert. denied, 252 Conn. 906, 743 A.2d 617 (1999); *Chase* v. *State*, 45 Conn. App. 499, 501 n.3, 696 A.2d 1299 (1997).

fact, have been granted such an easement. In other words, the finding of abandonment presupposes the existence of the easement. In light of our determination that the court's finding of abandonment was clearly erroneous, we must resolve the issue of whether the plaintiffs and the predecessors were in fact granted the right-of-way over Bluff Street, independent of the court's implicit finding. On the basis of our review of the record before us, particularly the deeds documenting the chain of title to the relevant parcels, we conclude that the plaintiffs and their predecessors were in fact granted an easement over Bluff Street.

The origin of the plaintiffs' easement to use Bluff Street is the express language contained in the deeds. "[T]he determination of the intent behind language in a deed, considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is plenary. . . . Thus, when faced with a question regarding the construction of language in deeds, the reviewing court does not give the customary deference to the trial court's factual inferences. . . . The meaning and effect of the [language in the deed] are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances." (Internal quotation marks omitted.) *Dent* v. *Lovejoy*, 85 Conn. App. 455, 462–63, 857 A.2d 952 (2004), cert. denied, 272 Conn. 912, 866 A.2d 1283 (2005).

We now recite the relevant legal principles concerning the construction of deeds. "Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed . . . and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent expressed . . . in the language used, however, it is always admissible to consider the situation of the par-

ties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence. . . . In addition, when a deed sets forth two different descriptions of the property to be conveyed, the one containing the less certainty must yield to that possessing the greater, if apparent conflict between the two cannot be reconciled. . . .

"In the construction of a deed or grant, the language is to be construed in connection with, and in reference to, the nature and condition of the subject matter of the grant at the time the instrument is executed, and the obvious purpose the parties had in view. . . . [I]f the meaning of the language contained in a deed or conveyance is not clear, the trial court is bound to consider any relevant extrinsic evidence presented by the parties for the purpose of clarifying the ambiguity. . . .

"Furthermore, [a] reference to [a] map in [a] deed, [f]or a more particular description, incorporates [the map] into the deed as fully and effectually as if copied therein. . . . [T]he identifying or explanatory features contained in maps referred to in a deed become part of the deed, and so are entitled to consideration in interpreting the deed as though they were expressly recited therein." (Citations omitted; internal quotation marks omitted.) *Schwartz* v. *Murphy*, 74 Conn. App. 286, 291–92, 812 A.2d 87 (2002), cert. denied, 263 Conn. 908, 819 A.2d 841 (2003); see also *Coughlin* v. *Anderson*, 270 Conn. 487, 508, 853 A.2d 460 (2004).

Finally, we note that " '[t]he fact that servitudes are intended to bind successors to interests in the land, as well as the contracting parties, and are generally intended to last for an indefinite period of time, lends increased importance to the writing because it is often the primary source of information available to a pro-

spective purchaser of the land. The language should be interpreted to accord with the meaning an ordinary purchaser would ascribe to it in the context of the parcels of land involved. Searching for a particular meaning adopted by the creating parties is generally inappropriate because the creating parties intended to bind and benefit successors for whom the written record will provide the primary evidence of the servitude's meaning.' 1 Restatement (Third), Property, Servitudes § 4.1, comment (d), pp. 499–500 (2000)." *Dent* v. *Lovejoy*, supra, 85 Conn. App. 463–64.

In reviewing the relevant deeds and referenced maps, as well as the surrounding circumstances, we conclude that the common grantor, Zuk,[4] intended to establish a servitude, namely, a deeded right-of-way over Bluff Street, to benefit the owners of lots 10 and 11, which the plaintiffs presently own, and that this easement burdens the defendants' property. Specifically, we note the specific language contained in the deed conveying the property from Zuk to the defendants: "Said premises are subject to whatever rights exist in other lot owners as shown on said map of [the] Lewis Subdivision to pass over the northerly 30 feet of the premises being conveyed herein which is shown as Bluff Street on said map, and to a 5 foot right of way conveyed by the Grantor, Walter J. Zuk to Ralph and Helen C. Crispino . . . which right of way is located on the northerly 5 feet of said Bluff Street." In examining the deeds in the chain of title in the plaintiffs' property, we note that, starting with the conveyance from the common grantor Zuk, references are made to the right-of-way over the roadways located on the map. In sum, we conclude that

---

[4] "The common grantor is that owner of property who has divided it into building lots that are subject to a general development scheme as simultaneously expressed on the land records of the location of the property. See *Armstrong* v. *Leverone*, 105 Conn. 464, 470–71, 136 A. 71 (1927)." *DaSilva* v. *Barone*, 83 Conn. App. 365, 371, 849 A.2d 902, cert. denied, 271 Conn. 908, 859 A.2d 560 (2004).

the language contained within the deeds coupled with the surrounding circumstance to the pertinent land conveyances supports a determination that the predecessors to the plaintiffs were granted two easements over Bluff Street, namely, the thirty foot right-of-way and the northern five foot right-of-way limited to pedestrian traffic. This conclusion remains valid independent of the court's finding of abandonment, which we have determined to be clearly erroneous. See *Sorban* v. *Sterling Engineering Corp.*, 79 Conn. App. 444, 456, 830 A.2d 372, cert. denied, 266 Conn. 925, 835 A.2d 473 (2003).

We now address the issue of the scope of the express deeded easements. "The determination of the scope of an easement is a question of fact." *Pender* v. *Matranga*, 58 Conn. App. 19, 23, 752 A.2d 77 (2000). Additionally, we have stated that "[t]he use of an easement must be reasonable and as little burdensome to the servient estate as the nature of the easement and the purpose will permit. . . . The decision as to what would constitute a reasonable use of a right-of-way is for the trier of fact whose decision may not be overturned unless it is clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Strollo* v. *Iannantuoni*, 53 Conn. App. 658, 660–61, 734 A.2d 144, cert. denied, 250 Conn. 924, 738 A.2d 662 (1999).

In the present case, the court specifically found that both of the plaintiffs possessed a five foot right-of-way, limited to pedestrian traffic, over the northern portion of Bluff Street. The defendants have not challenged this finding. The court, by finding that the thirty foot right-of-way had been abandoned, did not make any finding with respect to the scope of that easement. We cannot conclude, as a matter of law, that the only possible result would be the plaintiffs' unrestricted use of the thirty foot easement, including the right to remove *any* perceived obstructions of Bluff Street. Factual findings

are a necessary prerequisite to determine the scope and extent of the plaintiffs' rights with respect to this easement. "It is well established that appellate courts are not triers of fact and rely on the trial court's findings and conclusions related thereto." *Southington* v. *Commercial Union Ins. Co.*, 61 Conn. App. 757, 761, 768 A.2d 454 (2001). Accordingly, the case must be remanded for further proceedings limited to the determination of the scope of the plaintiffs' thirty foot right-of-way over Bluff Street.

The judgment is reversed with respect to the finding of abandonment and the case is remanded for a determination of the scope of the plaintiffs' thirty foot right-of-way over Bluff Street. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

