******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CURTIS D. DEANE *v.* AMY DAY KAHN ET AL.
(SC 19324)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued March 23—officially released June 9, 2015*

*Wesley W. Horton*, with whom were *Brandon P. Levesque* and *F. Thor Holth*, for the appellant (plaintiff).

*Lloyd L. Langhammer*, for the appellees (named defendant et al.).

*Sean P. Clark*, with whom was *Kerry R. Callahan*, for the appellee (defendant John Gorman).

*Opinion*

EVELEIGH, J. The plaintiff, Curtis D. Deane, claims a right-of-way over land owned by the defendant John Gorman and land owned by the defendants Amy Day Kahn and Robert Kahn.[1] In this certified appeal, the plaintiff appeals from the judgment of the Appellate Court reversing the judgment of the trial court quieting title and establishing an easement by deed as of 1935 in favor of the plaintiff over the Gorman property and establishing an easement by necessity as of 1960 in favor of the plaintiff over the Kahn property. The plaintiff claims that the Appellate Court improperly concluded that he failed to prove: (1) the location or use of the easement by deed over the Gorman property; and (2) the use of the easement by necessity or implication over the Kahn property at the time his property became effectively landlocked. Regarding the Gorman property, we reverse the judgment of the Appellate Court as to the creation of an easement by deed and, accordingly, remand the case to that court with direction to affirm the judgment of the trial court on that count of the plaintiff's complaint. Regarding the Kahn property, we affirm the judgment of the Appellate Court as to the creation of an easement by necessity, but reverse as to the creation of an easement by implication and, accordingly, remand the case to the Appellate Court with direction to remand the case to the trial court for further proceedings in accordance with this opinion.

The following undisputed facts and procedural history are relevant to the present appeal.[2] "In the early 1900s, Harriet Warner owned a large estate of land along the shore of the Connecticut River in Lyme. The estate was shaped roughly like a triangle, with its base running along the riverfront on the south side of the estate, where the river flows from west to east. The estate was accessible from the northeast via Brockway's Ferry Road, a public road that ran from northeast to southwest along the upper left or northwest side of the estate. As the road approached the river, however, near the southwest corner of the estate, it split into two branches, one of which continued southwestward while the other turned sharply to the east and continued eastward, parallel to the river, part way across the south side of the estate." *Deane* v. *Kahn*, 149 Conn. App. 62, 64, 88 A.3d 1230 (2014).

The estate would later be divided into a series of parcels that the parties in the present case would come to own.[3] The three properties owned by the parties are contiguous, with the Gorman property to the west, the Kahn property in the middle, and the Deane property to the east. See footnote 2 of this opinion. Common to all three properties is the private right-of-way at issue in the present case, which extends from the end of the eastward branch of Brockway's Ferry Road, and continues parallel to the river part of the way across

the south side of the estate. "In this action to quiet title, the plaintiff . . . claims that he has the right to access the southern, riverfront portion of his sloping property from the west, across: (1) [the Gorman property] . . . over which the plaintiff claims a right-of-way pursuant to [a] 1935 deed; and (2) [the Kahn property] . . . over which the plaintiff claims an easement by necessity [that arose in 1960]." *Deane* v. *Kahn*, supra, 149 Conn. App. 65.

"On January 19, 1935, Harriet Warner conveyed a fee simple interest in [the Gorman property] to Walter Hastings." Id., 64. "Under the terms of Harriet Warner's deed to Walter Hastings . . . the tract conveyed to him was to be free of encumbrances, 'except that a [right-of-way] is reserved in perpetuity across said tract along the route now in use.' The 1935 deed contained no other language describing the location, direction, dimensions, uses or purposes of the right-of-way so reserved, or of 'the route now in use' along which it was to run." Id., 64–65.

"In 1936, Harriet Warner conveyed the remainder of her estate to her children, Hester Warner and [Musa Warner] Caples. Although Harriet Warner reserved a life use of the property so conveyed for herself, her deeds to her daughters made no mention of the right-of-way across the Gorman property reserved in the 1935 deed. On December 30, 1936, Hester Warner and Caples split the property between themselves, Caples conveying the western portion of the property to Hester Warner and Hester Warner conveying the eastern portion of the property, including [what would become] the Kahn and Deane properties, to Caples.

"In 1938, the Gorman property was transferred by certificate of devise from the estate of Walter Hastings to William Hastings, whereafter, in 1945, it was conveyed by William Hastings to Kenneth Johnson. . . . No mention of the 1935 right-of-way was made in any of the above-described conveyances of the Gorman property.

"On February 8, 1955, Johnson conveyed the Gorman property to [Marion Sreboff and Charles Sreboff]. The 1955 deed from Johnson to the Sreboffs mentioned the right-of-way reserved by the 1935 conveyance for the first time since that date. It provided, more particularly, that the property so conveyed was subject: 'To a [right-of-way] reserved in [the 1935] deed recorded in Volume 51 at page 25 of the Lyme land records in perpetuity across the land above described as parcel 1 and along the route now in use.' There has been no other reference to the 1935 reservation in any other deed in the chain of title by which the Gorman property ultimately descended to Gorman from the Sreboffs . . . .

"On July 6, 1960, Caples simultaneously conveyed a portion of her property that would later become the

Kahn property to Marion Sreboff and an adjoining parcel directly to the east of it that would later become the Deane property to Charles Sreboff. The deed to Marion Sreboff created a common driveway easement and a mutual boundary easement to provide the Kahn property with access over the Deane property to and from Brockway's Ferry Road." (Footnotes omitted.) Id., 69–71. This deed did not mention the right-of-way at issue in the present case, though it did contain language stating that it was conveyed "with the appurtenances thereof."

"On January 14, 1970, Marion Sreboff conveyed the Kahn property to Frank [Heineman] and Denise Heineman . . . . On May 13, 1981, Marion Sreboff and her daughter, [Carole] Schmitt, who then jointly owned the Gorman property, granted the Heinemans a right-of-way over the riverfront portion of that property, 'along that strip of land which is the easterly exten[sion] of the ancient private dirt road, as it now lays, across' the property. . . . In none of [the] deeds in the chain of title to the Kahn property, from Harriet Warner to Amy Day Kahn, is there any reference to the 1935 reservation. In all [but one] of them, however . . . the Kahn property is conveyed 'with the appurtenances thereof.' " *Deane* v. *Kahn*, supra, 149 Conn. App. 71.

"All conveyances of the Deane property were specifically made subject to the common driveway and mutual boundary easements created by Caples in favor of the Kahn property when she first separated the Kahn property from the Deane property and sold them respectively to Marion Sreboff and Charles Sreboff. In none of the deeds to the Deane property, however, is there any mention of the right-of-way reserved by Harriet Warner over what is now the Gorman property in 1935. In all of those deeds, however, the Deane property is conveyed 'with the appurtenances thereof.'

"On August 20, 2001, the plaintiff filed this action seeking, inter alia, to quiet title to his alleged right-of-way across the Gorman and Kahn properties to access the lower portion of [the Deane property], and to enjoin the defendants from interfering with his quiet enjoyment and use of that right-of-way." Id., 72.

"In a thorough memorandum of decision, the trial court concluded, inter alia, that the plaintiff has an easement over the Gorman property by virtue of the 1935 deed and an easement by necessity over the Kahn property, which arose in 1960 when . . . Caples, who then owned the eastern portion of [Harriet Warner's] former estate, which included both the Deane property and the Kahn property, divided those properties into separate tracts and conveyed them, respectively, to Charles Sreboff and Marion Sreboff . . . . Upon reaching the foregoing conclusions, the court went on to rule that 'the scope of the deeded easement over the Gorman property and the easement by necessity over the Kahn

property should be defined in identical terms,' which it then described in great detail, specifying its location on the burdened properties, its dimensions and its scope, including both the purposes for which and the time and manner in which it could be used." (Footnote omitted.) Id., 65–66. Although the trial court ruled in favor of the plaintiff with respect to two counts—namely, the count alleging the creation of an easement by deed over the Gorman property and the count alleging the creation of an easement by necessity over the Kahn property—it did not rule on the count alleging the creation of an easement by implication over the Kahn property.

The defendants appealed from the judgment of the trial court to the Appellate Court, which concluded that "the plaintiff failed to prove, either by the language of the 1935 deed or by the circumstances existing at the time of its execution, that the 1935 deed created an easement [by deed] appurtenant to Harriet Warner's property across the Gorman property" and that "the plaintiff failed to prove that he is entitled to an easement by necessity over the Kahn property, either by showing that his property would be landlocked without it, which it would not be, or by showing that the parties intended to create such an easement at the time of its alleged creation in 1960, based upon evidence of the necessity for or the use of the claimed easement at that time." Id., 68. The Appellate Court, accordingly, reversed the judgment of the trial court in part. Id.

The plaintiff petitioned for certification to appeal from the judgment of the Appellate Court. This court granted the plaintiff's petition for certification to appeal limited to the following issues: (1) "Did the Appellate Court properly reverse the judgment of the trial court enforcing a right-of-way by deed on the ground that the plaintiff failed to prove its location or use?"; and (2) "Did the Appellate Court properly reverse the judgment of the trial court enforcing a right-of-way by implication or necessity on the ground that the plaintiff failed to prove what use was made of the right-of-way at the time the riverfront portion of the property became effectively landlocked?" *Deane* v. *Kahn*, 312 Conn. 903, 91 A.3d 906 (2014). The defendants raise two alternative grounds for affirmance: (1) the easement by deed over the Gorman property was not appurtenant to the land; and (2) an easement by necessity over the Kahn property cannot be imposed unless the dominant parcel is landlocked and the easement connects the landlocked parcel to a public road.[4]

I

THE GORMAN PROPERTY

In the first certified question of this appeal, which pertains to the easement by deed over the Gorman property, the plaintiff claims that the Appellate Court

improperly concluded that the plaintiff failed to prove the easement's location or use because the Appellate Court would have required the plaintiff to prove such location and use with evidence exclusively from the time of the conveyance in 1935. Gorman claims that the Appellate Court's insistence on evidence solely from 1935 was proper, and further claims that the judgment of the Appellate Court can be upheld on the alternative ground that the easement by deed, if any, was in gross and not appurtenant to the Deane property. We agree with the plaintiff and reverse the judgment of the Appellate Court.

We begin with the standard of review. In the present case the trial court concluded, and the parties agree, that the language of the 1935 deed evinced an intent to create an easement. "Although in most contexts the issue of intent is a factual question on which our scope of review is limited . . . the determination of the intent behind language in a deed, considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is plenary. . . . *Eis* v. *Meyer*, 17 Conn. App. 664, 667–68, 555 A.2d 994, aff'd, 213 Conn. 29, 566 A.2d 422 (1989). Nevertheless, [t]he determination of the scope of an easement is a question of fact . . . [and] is for the trier of fact whose decision may not be overturned unless it is clearly erroneous. . . . *Simone* v. *Miller*, 91 Conn. App. 98, 111, 881 A.2d 397 (2005)." (Internal quotation marks omitted.) *Stefanoni* v. *Duncan*, 282 Conn. 686, 699, 923 A.2d 737 (2007). The parties thus dispute whether the factual findings that the trial court set forth in its memorandum of decision as to the easement's location and use are clearly erroneous.[5] See *McBurney* v. *Paquin*, 302 Conn. 359, 368, 28 A.3d 272 (2011). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[6] (Internal quotation marks omitted.) Id.

We first consider the plaintiff's claim that the Appellate Court improperly concluded that he failed to prove the easement's location or use *in 1935*. The 1935 deed to Walter Hastings reserved, to Harriet Warner, "a right of way . . . in perpetuity across said tract along the route now in use." Because the language of the deed did not sufficiently identify the location of the easement, however, the trial court looked to "the surrounding circumstances in 1935" to identify the easement's precise location.

The trial court relied on the testimony of Robert Sutton, who has lived in the area since the 1940s, and Carole Schmitt, who lived in the area between 1955 and 1968, both of whom confidently described the route as the well worn path along the shore of the Connecticut

River eastward from the public road.[7] The trial court also relied on maps from 1945 and 1951 as establishing the location of the easement as the private extension of "a public road leading from Brockway's Ferry Road along the riverfront in the direction of the Gorman, Kahn and Deane properties."[8] Finally, the trial court noted that, in 1981, Schmitt and Marion Sreboff, who owned the Gorman property, granted an easement to the Heinemans, who owned the Kahn property, which was located " 'along that strip of land which is the easterly [extension] of the ancient private dirt road, as it now lays [across the property],' " which demonstrated that the location of the easement was evident to all parties both before and after the 1935 deed. (Emphasis omitted.)

On appeal, after concluding that the language of the 1935 deed was insufficient to describe the location of the right-of-way, the Appellate Court concluded that "none of the evidence relied upon by the trial court sheds light on circumstances surrounding the execution of the deed in 1935 from which such details [about the easement's location or use] can be inferred." *Deane* v. *Kahn*, supra, 149 Conn. App. 76–77. The Appellate Court therefore noted that, in the absence of evidence "as to use of the purported right-of-way *in 1935* . . . the plaintiff failed to prove that he has a deeded easement over the Gorman property." (Emphasis added.) Id., 78. The plaintiff claims that the Appellate Court improperly restricted the scope of evidence that the trial court could consider to evidence immediately preceding and during the 1935 conveyance. Gorman responds that the meaning of the reservation in the 1935 deed is properly determined by the facts and circumstances existing solely in 1935. We agree with the plaintiff.

Our case law provides that, in considering "relevant extrinsic evidence presented by the parties for the purposes of clarifying the ambiguity" in a conveyance; *Il Giardino, LLC* v. *Belle Haven Land Co.*, 254 Conn. 502, 511, 757 A.2d 1103 (2000); "the circumstances that existed at the time of [the conveyance's] creation" are relevant. *McBurney* v. *Paquin*, supra, 302 Conn. 379. In *McBurney*, this court stated that "[e]vidence of present, or relatively recent, actual use of the easement bears little relation to what was considered reasonably necessary for its use and normal enjoyment more than 100 years ago." Id., 380. "[U]se in other periods far removed in time from the creation of the implied easement, is not reasonably viewed as part of the surrounding circumstances . . . in and around [the time of the conveyance]." Id., 379.

But *McBurney* does not prohibit the use of all post-conveyance evidence to determine the scope of an easement; it merely sets the outer temporal limit, specific to the facts and circumstances of each individual case, to the evidence that bears a reasonable relation to the

surrounding circumstances at the time of the convey-ance. Indeed, in *McBurney*, this court found no clear error in the trial court's consideration of evidence of use of an easement from the date of creation of the easement in 1885 to the "early twentieth century." Id., 380. So long as the evidence bears a reasonable "relation to what was considered reasonably necessary for [the conveyance's] use and normal enjoyment" at the time of the conveyance and consideration of such evidence does not pose a risk of "expand[ing] or contract[ing] the scope of [a conveyance] in contravention of the intent of its creator," postconveyance evidence may properly be considered by a trial court. (Internal quota-tion marks omitted.) Id.; accord *Porter* v. *Morrill*, 108 Conn. App. 652, 662, 949 A.2d 526 (The court rejected a claim that evidence of a conveyance in 1852 was not probative of the intent of the parties to a 1816 deed because "[t]his title problem originated with a deed that is nearly 200 years old. The intention of [the predecessor owners of interest] cannot be determined if the court is restricted solely to a review of the 1816 deed; the individuals who could provide information relative to that conveyance died many years ago."), cert. denied, 289 Conn. 921, 958 A.2d 152 (2008).

In the present case, the trial court's consideration of evidence of the location and use of the right-of-way before and *immediately after* the 1935 conveyance, including credible evidence of use of the well worn path in the 1940s and 1950s by Schmitt and Sutton, was not clearly erroneous. Because the trial court properly considered this evidence, and because "the determina-tion of the scope of an easement is a question of fact that will not be overturned unless clearly erroneous"; *McBurney* v. *Paquin*, supra, 302 Conn. 367–68; we con-clude that there is sufficient evidence in the record to support the trial court's finding of the location and use of an easement by deed over the Gorman property.

We now consider Gorman's claim that the judgment of the Appellate Court should be affirmed on the alterna-tive ground that the claimed right-of-way was not appur-tenant to the land retained by Harriet Warner in 1935. Only if the right-of-way was appurtenant to Harriet War-ner's property in 1935 may the plaintiff claim that its benefit ran with the land, and upon severance of the property in 1960, passed to him through the chain of title. See *Il Giardino, LLC* v. *Belle Haven Land Co.*, supra, 254 Conn. 512. Gorman claims that the plaintiff failed to rebut the presumption that, where a "reserva-tion creating an easement does not mention the heirs and assigns of the grantee . . . the grantor and grantee intended the right-of-way to be in gross"; *Stiefel* v. *Lind-ermann*, 33 Conn. App. 799, 806, 638 A.2d 642 (1994); and that the easement lacked an identified dominant estate. The plaintiff responds that the same post-1935 evidence he offered to establish the easement's location and use also establishes the appurtenance of the ease-

ment granted to Harriet Warner's property. We agree with the plaintiff.

"It is well settled that [i]f the easement makes no mention of the heirs and assigns of the grantee, a presumption is created that the intent of the parties was that merely a personal right-of-way was reserved. This presumption, however, is not conclusive. A reservation will be interpreted as creating a permanent easement if, from all the surrounding circumstances, it appears that that was the intention of the parties." (Internal quotation marks omitted.) *Kelly* v. *Ivler*, 187 Conn. 31, 39–40, 450 A.2d 817 (1982). "One circumstance which must be given great weight in the ascertainment of the intent of the parties is . . . [if the easement] is of value to the property to which it is appurtenant and will continue to be of value [to] whoever may own the property, that is strong evidence that the parties intended a permanent easement." (Internal quotation marks omitted.) Id., 42. "Also significant is whether the owner of the servient estate recognized the right of the subsequent owners of the dominant estate to exercise the easement." (Internal quotation marks omitted.) Id., 43. "Finally, we will look to the actual language of the reservation clause itself." Id., 44. "The burden of proof rests upon [the party claiming appurtenance] to show the existence of all facts necessary to prove the right-of-way was created as an appurtenance," although our review of the trial court's conclusion as to whether the parties to a conveyance intended it to be appurtenant is plenary. *Branch* v. *Occhionero*, 239 Conn. 199, 205, 681 A.2d 306 (1996); see also footnote 6 of this opinion.

The trial court acknowledged that the reservation in the 1935 deed lacked words of inheritance, but nevertheless concluded that the circumstances surrounding the creation of the easement confirmed that Harriet Warner intended to create an easement appurtenant. As to the language of the reservation, the trial court relied on the words "in perpetuity" in the reservation as demonstrating that the grantor wished the reservation to continue after her death. The trial court further found that the easement "would be of obvious benefit" to "anyone who might thereafter come to own the Deane and Kahn properties" because of the steep slope hindering easy access from upper portions of the Deane property to the riverfront. The record also reveals testimony indicating that the prior owners of the Gorman property, specifically the Sreboffs, recognized the rights of subsequent owners of the surrounding dominant estates to use the right-of-way. We conclude that there was sufficient evidence to support the trial court's conclusion that it was the intent of the parties to the 1935 deed to create an easement appurtenant.

Gorman nevertheless claims that, even if the easement were appurtenant, severance of Caples' property in 1960 would have extinguished any appurtenant right

as to the Deane property. See *Stiefel* v. *Lindemann*, supra, 33 Conn. App. 813 ("where an easement is appurtenant to any part of a dominant estate, and the [dominant] estate is subsequently divided into parcels, each parcel may use the easement . . . if the easement directly abuts on the new parcel, or . . . if the owner of the new parcel can reach the easement by traveling over intervening land over which the owner has a legal right of passage" [citation omitted]), citing *Phoenix National Bank* v. *United States Security Trust Co.*, 100 Conn. 622, 630, 124 A. 540 (1924). According to Gorman, although the Kahn property would have retained the benefit of the appurtenant right-of-way over the Gorman property upon severance in 1960 because the two properties were adjacent, the Deane property would not have retained the benefit of the appurtenant right-of-way over the Gorman property if this court concludes that the Deane property does not enjoy a legal right of passage—an easement by necessity—over the Kahn property. As we will discuss in further detail in part II of this opinion, although we conclude that an easement by necessity did not arise upon severance by Caples in 1960, we remand the case on the issue of whether the plaintiff enjoys an easement by implication over the Kahn property. Because the legal conclusions on remand are dispositive of Gorman's claim that the easement by deed was extinguished in 1960 as to the Deane property, that claim does not provide an alternative ground on which this court may affirm the judgment of the Appellate Court. On remand, if the trial court concludes that the plaintiff enjoys an easement by implication over the Kahn property, the easement by deed over the Gorman property in favor of the Deane property may not have been extinguished because the plaintiff will have been able to reach the easement by traveling over intervening land. See *Stiefel* v. *Lindemann*, supra, 813. We therefore reverse the judgment of the Appellate Court with respect to the easement by deed over the Gorman property.

## II

### THE KAHN PROPERTY

In the second certified question of this appeal, which pertains to the easement by necessity over the Kahn property, the plaintiff claims that the Appellate Court improperly concluded that the plaintiff failed to prove the use of the right-of-way in 1960 when Caples split her property into the Deane property and Kahn property. The defendants disagree and further claim that the judgment of the Appellate Court can be upheld on the alternative ground that an easement by necessity cannot be imposed unless the dominant parcel is landlocked and the easement connects the landlocked parcel to a public road. We agree with the defendants as to their alternative ground and, therefore, we need not address the second certified question in this appeal.

For the reasons set forth subsequently in this opinion, however, we reverse the judgment of the Appellate Court in part and remand the case to that court with direction to remand the case to the trial court for further proceedings on the plaintiff's claim of an easement by implication over the Kahn property.

We begin with the standard of review. The parties do not challenge the trial court's factual finding that the plaintiff's parcel is not truly landlocked because his property accesses a public road. Instead, the parties dispute whether the plaintiff's difficulty in accessing the riverfront portion of his property renders that portion of the Deane property "effectively landlocked" or diminishes the value of his property such that, as a matter of law, he is nevertheless entitled to an easement by necessity. Because the question of whether a nonlandlocked parcel may benefit from an easement by necessity is a question of law, our review is plenary. See *Christensen* v. *Reed*, 105 Conn. App. 578, 583, 941 A.2d 333, cert. denied, 286 Conn. 912, 944 A.2d 982 (2008).

The Appellate Court appropriately set forth the law of easements by necessity. " 'The requirements for an easement by necessity are rooted in our common law. . . . [A]n easement by necessity will be imposed where a conveyance by the grantor leaves the grantee with a parcel inaccessible save over the lands of the grantor, or where the grantor retains an adjoining parcel which he can reach only through the lands conveyed to the grantee. . . . [T]o fulfill the element of necessity, the law may be satisfied with less than the absolute need of the party claiming the [right-of-way]. The necessity element need only be a reasonable one. . . . Moreover, although it is true that [a]n easement of necessity may occur when a parcel has become landlocked from outside access such that the owner would have no reasonable means of ingress or egress except over lands promised by another and a right-of-way is necessary for the enjoyment of the parcel . . . [t]he inverse also is true; that is, a common-law right-of-way based on necessity expires when the owner of a dominant estate acquires access to a public or private road through another means.' . . . *Montanaro* v. *Aspetuck Land Trust, Inc.*, 137 Conn. App. 1, 27–28, 48 A.3d 107, cert. denied, 307 Conn. 932, 56 A.3d 715 (2012). 'The basis of the right is the presumption of a grant arising from the circumstances of the case. If the situation is such that the landowner has absolutely no access to his property except across the land of his grantor, the presumption is clear and the right undoubted. If he has such access over other land of his own, the mere fact that such access is inconvenient or expensive will not raise the presumption of a grant of a more convenient way over the land of his grantor. It may be, however, that, while access to the property is not absolutely cut off, the circumstances of the case are such that the means of access available would not afford the landowner

any real beneficial enjoyment of his property. Such a situation would arise when the expense of making the means of access available would exceed the entire value of the property to which access was sought. Such a means of access would be no better than none at all, and there would seem to be equal reason for presuming a grant under such circumstances as in the case where there was no access. Although there are cases which hold that the way must be one of strict necessity, the weight of authority supports what seems to us to be the better rule—that the necessity need only to be [a] reasonable one. . . .

" 'It has been said that the test of necessity is whether the party claiming the right can at reasonable cost, on his own estate, and without trespassing on his neighbors, create a substitute. . . . In most of the cases which have held that a way of necessity does not exist when a man can get to his own property through his own land, the way was sought on the grounds of convenience and economy only.' . . . *Marshall* v. *Martin*, 107 Conn. 32, 37–38, 139 A. 348 (1927). '[T]he necessity does not create the way, but merely furnishes evidence as to the real intention of the parties; [f]or the law will not presume that it was the intention of the parties that one should convey land to the other in such manner that the grantee could derive no benefit from the conveyance; nor that he should so convey a portion as to deprive himself of the enjoyment of the remainder. The law, under such circumstances, will give effect to the grant according to the presumed intent of the parties. A way of this kind is limited by the necessity which creates it.' . . . *Robinson* v. *Clapp*, 65 Conn. 365, 385, 32 A. 939 (1895). '[T]he element of necessity has been rather strictly construed and made to depend on the situation of both parties, the nature and adaptability of the property, and surrounding circumstances.' *Hollywyle Assn., Inc.* v. *Hollister*, 164 Conn. 389, 401, 324 A.2d 247 (1973)." *Deane* v. *Kahn*, supra, 149 Conn. App. 80–82. "The presumption as to the intent of the parties is a fiction of law, as the court recognized long ago in *Robinson* . . . and merely disguises the public policy that no land should be left inaccessible or incapable of being put to profitable use." *Hollywyle Assn., Inc.* v. *Hollister*, supra, 400.

The trial court found that the plaintiff's parcel was not truly landlocked because the upper portion of his property, on which the plaintiff's house is located, accesses a public road. Nevertheless, the trial court concluded that the "lower portion of [the Deane property] along the riverfront [is] inaccessible to vehicular traffic from the upper portion due to a steep slope separating the two, thus precluding its reasonable and productive use and development without access to the road via the riverfront easement. Even access by foot [is] problematic due to the steepness of the slope." The trial court therefore concluded that, "[w]ithout direct

vehicular access from the road, [the plaintiff] has been and will continue to be unable to conduct ordinary maintenance of the lower portion of his property on a regular basis, to deal with damage to that portion caused by unusual events, such as a severe storm or flooding, to maintain his well or seawall or to construct a beach or boat dock on the river."

In applying the law of easement by necessity, the trial court concluded that, although "[the Deane] property is not landlocked, in the technical sense, because he has a way out of his property . . . to the road . . . that part of his property which has access to the water, a characteristic of property that has repeatedly been recognized by Connecticut [c]ourts as intrinsically valuable; see, e.g., *Kelly* v. *Ivler*, [supra, 187 Conn. 42]; is of little beneficial use to him in the absence of access over the riverfront easement and the Kahn property." The trial court rendered judgment for the plaintiff on the third count of his complaint, concluding that "recognition of an easement by necessity is . . . reasonably necessary to provide [the plaintiff] with the beneficial enjoyment of his property."

The Appellate Court reversed the judgment of the trial court on the ground that the trial court failed to make any findings related to the "use of the right-of-way at the time of the 1960 conveyances" or "the existence of the need for vehicular access at the time of the purported creation of the easement by necessity." *Deane* v. *Kahn*, supra, 149 Conn. App. 83–84. Although the plaintiff had raised, as an alternative ground for affirmance, a claim that the factual findings of the trial court would also support an easement by implication, the Appellate Court rejected this claim in a footnote. Specifically, the Appellate Court concluded that "the [trial] court made no findings as to the use of the purported riverfront easement at the time of the 1960 severance, and that the record, in fact, discloses no such use . . . ." Id., 85 n.24.

On appeal, the defendants claim that the Appellate Court's reversal of the judgment of the trial court can be affirmed on the ground that the Deane property was not landlocked and, therefore, that the plaintiff is not entitled to an easement by necessity. The plaintiff responds that any necessity need only be a "reasonable necessity" pursuant to *Hollywyle Assn., Inc.* v. *Hollister*, supra, 164 Conn. 398–99, and that, therefore, he is entitled to an easement by necessity if the lower portion of his property is "effectively landlocked." The plaintiff relies on *Hollywyle Assn., Inc.* v. *Hollister*, supra, 399–401, and *Marshall* v. *Martin*, supra, 107 Conn. 36, for the proposition that a parcel need not be landlocked to be entitled to an easement by necessity. We agree with the defendants.

In *Marshall*, the defendant purchased the subject parcel, which was bounded on the north by another prop-

erty that he had purchased previously and bounded on the west by a railroad and the plaintiff's property. Id., 35–36. Each of the defendant's parcels had been conveyed to him at separate times over a series of years, with the subject parcel and the plaintiff's parcel having once been owned by a common grantor. Id. The property to the north of the subject parcel, purchased by the defendant in prior years, was bounded on the east by another of the plaintiff's properties, both of which were bounded on the north by a public highway. Id. Despite the northern two properties' access to the public road, the defendant was unable to reach the public road from the subject parcel by way of the two northern properties because the land of those two northern properties was low and marshy, making access impracticable without extensive construction that would yield costs in excess of the value of all of the defendant's properties combined. Id., 39. The defendant sought an easement by necessity over the plaintiff's property to the west in order to access the public road. Id., 34–35.

This court concluded that, "[i]f [the defendant] has [access to the subject parcel] over *other* land of his own, the mere fact that such access is inconvenient or expensive will not raise the presumption of a grant of a more convenient way over the land of his grantor. It may be, however, that while access to the property is not absolutely cut off, the circumstances of the case are such that the means of access available would not afford the landowner any real beneficial enjoyment of his property. *Such a situation would arise when the expense of making the means of access available would exceed the entire value of the property to which access was sought.* Such a means of access would be no better than none at all and there would seem to be equal reason for presuming a grant under such circumstances as in the case where there was no access. Although there are cases which hold that the way must be one of strict necessity, the weight of authority supports what seems to us to be the better rule—that the necessity need only be a reasonable one." (Emphasis added.) Id., 37. "If the cost of obtaining access to one's land [through other land owned by the defendant] is greater than the value of the land, he is no better off than if the land were quite inaccessible . . . ." Id., 39.

This court granted the defendant in *Marshall* an easement by necessity over the lands of the plaintiff because, even though the subject parcel, when added to the two northern properties and thereby viewed as one large parcel, technically accessed the public road, when viewed in isolation and *without* reference to the two northern parcels, as the parcel had been viewed prior to the defendant's purchase of it, the parcel was, indeed, landlocked because it had no actual access to a public road. See id., 39–40. But, even viewing the subject parcel as one large parcel by reference to the two northern properties, access to a public road remained impractica-

ble because "difficulties of the ground" meant that the expense of constructing passage through the adjacent parcels would exceed the value of all of the land holdings combined, including the landlocked parcel. Id., 37.

Decades later, this court cited *Marshall* for the proposition that the necessity for an easement by necessity "need only be a reasonable one." *Hollywyle Assn., Inc.* v. *Hollister*, supra, 164 Conn. 399. *Hollister* has, in turn, been cited as establishing our state as one that allows for the creation of an easement by necessity upon a showing of "reasonable necessity," as opposed to "absolute necessity." See J. Bruce & J. Ely, Law of Easements and Licenses in Land (2011) § 4:10, pp. 4-31 through 4-33. While we do not quarrel with this characterization, we note that *Marshall* has never been interpreted as broadly as the plaintiff has suggested and represents only a narrow exception to the vast extent of our case law, which generally provides for the creation of an easement by necessity only when a parcel is truly landlocked. Moreover, to the extent that *Marshall* allows an easement by necessity upon a showing of "reasonable necessity," it defined that term as present "when the expense of making the means of access available [through a landowner's adjacent, yet separate lot] would exceed the entire value of the property to which access was sought." *Marshall* v. *Martin*, supra, 107 Conn. 37.

In the present case, the plaintiff claims that the "steepness of the slope and . . . the impediment it presents to [vehicular] passage" by the plaintiff from the upper portion of his property to the lower, riverfront portion of the property precludes the plaintiff's "reasonable use" of the property and therefore renders the lower portion of his property "effectively landlocked." But, unlike the subject parcel in *Marshall*, the lower portion of the Deane property was never a separate parcel conveyed separately to him. Furthermore, even if this court overcame that factual distinction to *Marshall*, and even if this court concluded that difficulties posed by the slope on the Deane property were similar in scope to the difficulties posed by the marshy, adjacent lands in *Marshall*, the trial court in the present case did not make a factual finding that the cost of providing access to the riverfront portion of the Deane property without a right-of-way would exceed the value of the entire property.[9] *Hollister* did not expand *Marshall* to allow creation of an easement by necessity to one portion of a parcel through the lands of others even though the remainder of a landowner's parcel abuts and easily accesses a public road without the factual predicates present in *Marshall*.[10] At oral argument, the plaintiff conceded that no case has concluded as such, and we decline to extend *Marshall* to so conclude. Because the facts of *Marshall* are distinguishable from the facts of the present case, we affirm the judgment of the Appellate Court insofar as it reverses the judgment of the

trial court establishing an easement by necessity over the Kahn property in favor of the plaintiff.[11]

Affirming the judgment of the Appellate Court as to the easement by necessity does not dispose of all the claims relating to the Kahn property, however, because the plaintiff raised an alternative ground for affirmance before the Appellate Court, namely, the creation of an easement by implication, a claim that does not require that a parcel be landlocked. See *McBurney* v. *Paquin*, supra, 302 Conn. 380. Because the trial court did not render judgment on this count, we must consider whether the record presently before this court contains sufficient factual findings to support an easement by implication.

The plaintiff claims that the trial court's findings of fact with respect to an easement by necessity are sufficient for an easement by implication. Our review of the record leads us to conclude that, although the trial court made some factual findings that likely will support the plaintiff's claim for an easement by implication over the Kahn property, such findings may merely be incidental to the judgment that the trial court rendered *solely on the plaintiff's count of easement by necessity*. We decline to surmise whether the trial court would have made any additional factual findings if it had rendered judgment on other counts of the plaintiff's complaint, especially in light of the fact that this opinion clarified what evidence is probative of the parties' intent with respect to the scope and use of an easement. We therefore reverse the judgment of the Appellate Court as to easement by implication and remand the case to that court with direction to remand the case to the trial court for further proceedings on that count of the plaintiff's complaint.[12]

The judgment of the Appellate Court is reversed as to the creation of an easement by deed over the Gorman property and the case is remanded to that court with direction to affirm the judgment of the trial court on that count of the plaintiff's complaint. The judgment of the Appellate Court is affirmed as to the creation of an easement by necessity over the Kahn property, but reversed as to the creation of an easement by implication over the Kahn property, and the case is remanded to the Appellate Court with direction to remand the case to the trial court for further proceedings in accordance with the preceding paragraph.

In this opinion the other justices concurred.

APPENDIX

[1] We refer in this opinion to John Gorman, Amy Day Kahn, and Robert Kahn collectively as the defendants and individually by name. For the sake of simplicity, we refer to the three properties at issue in the present case as the Gorman property, the Kahn property, and the Deane property. See footnote 2 of this opinion.

[2] We note that the trial court attached a map of the properties at issue in the present case to its memorandum of decision. For the sake of convenience, a portion of this map is set forth as an appendix to this opinion. The Gorman property is labeled as parcel 19 on the map. The Kahn property lies to the northeast of the Gorman property and is shaded on the map. Finally, the Deane property lies east of the Kahn property and extends north to Brockway's Ferry Road.

[3] We note that the conveyances in 1935 and 1960 are the most pertinent to the resolution of the present case. For the sake of simplicity, this opinion omits some facts pertaining to other conveyances that have no bearing on our disposition of the parties' claims.

[4] We note that the defendants did not file a statement of alternative grounds on which the judgment could be affirmed in compliance with Practice Book § 84-11. Nevertheless, we will review these claims because doing so does not prejudice the plaintiff insofar as the plaintiff addressed them in his reply brief and at oral argument. See *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 499 n.22, 43 A.3d 69 (2012).

[5] The parties, and appellate case law, have used the terms "location," "scope," and "use" somewhat interchangeably. See *St. Germain* v. *Hurd*, 128 Conn. App. 497, 506 n.5, 17 A.3d 516 (2011). We read scope and use as having similar meanings insofar as they involve "what [the] holder [of the easement] may do with it, [and] the purposes for which it may be used." (Internal quotation marks omitted.) *McBurney* v. *Paquin*, 302 Conn. 359, 367, 28 A.3d 272 (2011).

[6] This standard of review merits some explanation for clarity. See *Sanders* v. *Dias*, 108 Conn. App. 283, 290, 947 A.2d 1026 (2008) ("case law on th[e] issue [of the proper standard of review in the context of easements] is somewhat confusing"). Our scope of review as to the intent behind language in a deed is plenary. See *Il Giardino, LLC* v. *Belle Haven Land Co.*, 254 Conn. 502, 510–11, 757 A.2d 1103 (2000) ("[our] construction of [conveyance instruments] in order to ascertain the intent expressed in the deed presents a question of law and requires consideration of all its relevant provisions in the light of the surrounding circumstances"). Although the intent to create an easement by deed is therefore a question of law over which our review is plenary; see *Carbone* v. *Vigliotti*, 222 Conn. 216, 222, 610 A.2d 565 (1992); if the language of the deed is incomplete or ambiguous regarding the location, scope, or use of the easement, the trial court's resolution of those issues represents a question of fact subject to the clearly erroneous standard of review. See *McBurney* v. *Paquin*, supra, 302 Conn. 367–68 and n.9 (concluding scope of implied easement is question of fact where deeds considered by trial court "did not define the scope of the implied easement, but provided

indirect evidence [of] intent" and parties "do not quarrel with the trial court's interpretation of the deeds and request that we interpret them differently, which would present a subsidiary legal issue" but rather claimed solely that "the trial court should have relied on other evidence, and drawn particular inferences from that evidence, to make a different finding as to scope"); *Castonguay* v. *Plourde*, 46 Conn. App. 251, 261, 699 A.2d 226 (1997) ("In reviewing [the trial court's construction of the scope of a restriction in declaration], we are confronted with a review of not just the language of the declaration, but also the trial court's factual findings underlying its conclusions. '[W]hen the underlying facts that form the basis of the trial court's legal conclusion as to intent are challenged, our review is limited to determining whether the findings as to those underlying facts are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those findings are clearly erroneous.' "); 1 Restatement (Third), Property, Servitudes § 4.1, comment (d), pp. 499–500 (2000) (principles of contract interpretation "should be applied to determine the intent of the parties and the meaning of the terms expressed" but "ascertaining the intentions . . . of the parties [by interpretation of the language of the conveyance may] not resolve all disputed questions as to the scope and terms of a servitude"). In the absence of unambiguous or complete language in the deed, therefore, determining the location, scope, and use of an express easement is a fact-intensive inquiry properly subject to the clearly erroneous standard of review. See *Sanders* v. *Dias*, supra, 296; see generally annot., 24 A.L.R.4th 1053 (1983).

[7] Sutton testified that he and his family regularly used the route during the 1940s and later. He testified that the route serviced a house previously located on the lower portion of the Deane property and was used frequently and continuously to bring supplies from the road and over the Gorman property and Kahn property to the house until it was torn down in the 1950s. Carole Schmitt testified to use of the route after the 1950s, which the trial court took as "persuasive evidence that the 'route' of the easement reserved by [Harriet] Warner was understood both before and after [the 1935 deed] to be along the shore of the Connecticut River eastward from the road."

[8] The trial court credited the testimony and maps provided by Gerald Stefon, a surveyor retained by the Kahns, as demonstrating "what the surveyor [at the time of the survey] sees on the ground and [which] might properly be labeled as evidence of a right-of-way to pass, which is the way in which the court is using them." The trial court concluded that "[t]he obvious purpose of this road was to provide easy access to certain residential and commercial premises along the water. This road existed well before [Harriet] Warner's 1935 conveyance. . . . Stefon's map further shows the existence, historically, of a private path extending from the public road in the same easterly direction along the riverfront and continuing through the Gorman property, stopping at the boundary with the Kahn property. Again, the obvious purpose of this path is to provide ready access from the road to residences . . . and businesses . . . further along the shore of the river. There is still clear evidence of this public/private 'route' on the ground, which photographs have evidenced and the court has observed."

[9] Instead, the trial court noted that "general knowledge of the value of property with direct access to the river and [the court's] view of the Deane property convinces [the court] that the riverfront easement is of great value to the property" and inferred that the cost of constructing a path for vehicular access from the upper to lower portions of the property "would be very substantial." The plaintiff failed to meet his burden of persuasion in proving that the cost of the access would have exceeded the value of his entire property. See *Branch* v. *Occhionero*, supra, 239 Conn. 205.

[10] Nor did *Hollister* or *Marshall* suggest that a landowner must be able to access each and every portion of his property, notwithstanding general access to the property from a public road, in the exact modality that the landowner claims is most convenient.

[11] We express no opinion as to the parties' other claims of error about the trial court's or Appellate Court's statements of the law of easement by necessity.

[12] The Kahns claim that, because the trial court found in favor of the plaintiff only on the theory of easement by necessity, if the plaintiff had wished to prevail on the theory of easement by implication, the plaintiff should have sought an articulation from the court pursuant to Practice Book §§ 61-10 and 66-5. Under the particular circumstances of the present case— where the claim of an easement by implication remains unadjudicated and where either the plaintiff or the Kahns could have sought an articulation from the trial court—and in light of the fact that this opinion has clarified what evidence is probative of the intent of parties to a conveyance with respect to the location, scope, and use of an easement, we conclude that

the trial court is in the best position to consider any issues that remain.

_____